# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3910

_____

Diane K. Dolph,                                    *
                                                   *
    Plaintiff - Appellant,                         *
                                                   *  Appeal from the United States
v.                                                 *  District Court for the
                                                   *  Southern District of Iowa.
Jo Anne B. Barnhart, Commissioner of               *
Social Security,                                   *
                                                   *
    Defendant - Appellee.                          *

_____

Submitted:  June 14, 2002

Filed: October 21, 2002

_____

Before WOLLMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Diane K. Dolph applied for social security disability benefits in early 1995, alleging a disability onset date of July 12, 1994. Dolph suffers from polycystic kidney disease, degenerative disease of the cervical spine, and carpal tunnel syndrome, all of which allegedly cause her disabling stomach, neck, and shoulder pain, as well as pain and numbness in her arms and hands. The administrative law judge (ALJ) discounted Dolph's complaints of disabling pain and found that she is not disabled because she has the residual functional capacity to perform her past relevant work as an apartment and hotel manager. See 20 C.F.R. § 404.1520(e). The

district court[1] affirmed the decision to deny benefits, concluding that the ALJ properly analyzed Dolph's pain complaints under Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), and that substantial evidence on the record as a whole supports the ALJ's findings and conclusion that Dolph is not disabled. Dolph appeals, arguing that the ALJ erred in rejecting the uncontradicted opinion of a treating physician and in discrediting her complaints of disabling pain.

The administrative record includes medical records covering an extended period and testimony at three administrative hearings.[2] We must determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. We may not reverse the Commissioner's decision merely because substantial evidence would support a contrary outcome. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). Applying this deferential standard of review, we affirm.

## I. Background.

Dolph was fifty-three years old when she filed her application for benefits. Prior to ceasing work in 1994, Dolph had been employed as a transcriptionist, word processing specialist, apartment and hotel manager, and secretary. In 1994, Dolph began seeing a nephrologist, Dr. Craig Shadur, after she was diagnosed as having polycystic kidney disease, a rare inherited condition in which multiple cysts in the kidneys frequently cause symptoms such as excessive urination, abdominal pain, elevated blood pressure, and eventual renal failure later in life. Dr. Shadur's

---

[1]The HONORABLE CHARLES R. WOLLE, United States District Judge for the Southern District of Iowa.

[2]When Dolph sought judicial review from an initial denial, the district court remanded the case for further proceedings at the Commissioner's request. The ALJ then conducted additional hearings in December 1998 and November 1999 and issued the decision here under review on January 24, 2000.

extensive notes record that Dolph's renal function has been stable for many years and that her blood pressure is well-controlled by prescription medication. The primary impact of her polycystic kidney disease has been stomach pain and discomfort due to her enlarged kidneys. In a February 1996 Attending Physician's Statement, Dr. Shadur opined that Dolph was disabled from any work that requires sitting and typing because of stomach discomfort when she sits for more than thirty minutes.

In December 1994, Dr. Robert Jones began treating Dolph's complaints of pain in the neck and arms and tingling and numbness in both hands. Dr. Jones's notes record that Dolph underwent two cervical diskectomies and a left carpal tunnel release in the 1980s. In January 1995 surgery, Dr. Jones performed an anterior cervical fusion at C4-5 and a right carpal tunnel release. Following a brief recovery period, Dolph told Dr. Jones that the surgeries had relieved her neck and arm pain. A few months later, however, Dolph returned to Dr. Jones complaining of neck pain and tenderness in her left shoulder. Finding no abnormalities, Dr. Jones recommended physical therapy and Tylenol.

Dr. Sol Iqbal treated Dolph's chronic neck and shoulder pain in 1996. Dr. Iqbal discovered mild arthritis in one joint and suspected Dolph's pain was caused by degenerative changes in her spine. He injected anti-inflammatory steroids into her left shoulder joint and muscle. Dr. Iqbal continued treating Dolph's neck and shoulder pain and headaches in 1997 and 1998, administering a selective epidural at C6 on the left side in July 1997, a facet rhizotomy and an occipital nerve block in April 1998, and a ganglion block in June 1998 to relieve her pain and headaches. A nerve conduction test in August 1998 found that Dolph's left upper arm and cervical paraspinal muscles were functioning normally. When Dolph continued to complain of headaches, neck pain, and reduced neck mobility, Dr. Iqbal requested a psychological assessment. The psychologist found that Dolph was not significantly depressed but evidenced "preoccupation with somatic complaints." Dr. Iqbal then

implanted a spinal cord stimulator in November 1998 but removed it after a few days because the sensation made Dolph uncomfortable.

Dolph continued to see doctors Shadur and Iqbal during 1999. Dr. Iqbal treated Dolph's headaches with ganglion nerve blocks, prescription migraine medicine, and an antidepressant. Dr. Shadur recorded that her kidney function, blood pressure, and cholesterol level remained well-controlled with medication. A neurologist, Dr. Steven Adelman, examined Dolph in April 1999 and found that she had mild limitation of motion in the cervical spine, a normal gait with the ability to heel and toe walk, and decreased sensitivity to pin prick sensation on her left arm. Dr. Adelman found no clinical evidence of neurologic impairment to support Dolph's subjective complaints of "significant pain related to cervical spondylosis" and what he believed to be muscle contraction headaches. Dr. Adelman opined that Dolph is able to stand, move about, and walk without restriction; has difficulty stooping, climbing, kneeling, or crawling; and should be limited to lifting no more than ten or fifteen pounds.

The ALJ found that Dolph does not have a listed impairment but suffers from a combination of severe impairments, most significantly polycystic kidney disease with hypertension and complaints of abdominal pain, status post cervical spine surgery and carpal tunnel release with complaints of pain, myofascial pain syndrome, pain disorder associated with both psychological factors and a general medical condition, and complaints of lower back pain and pain and numbness in the upper extremities and hands. In determining Dolph's residual functional capacity, the ALJ credited her testimony that she cannot sit or stand for more than thirty minutes at a time, cannot use her hands in a repetitious manner for more than ten or fifteen minutes at a time, and therefore cannot perform her past relevant work as a secretary, transcriptionist, or word processing specialist. The ALJ further found that Dolph has difficulty stooping, squatting, and twisting and cannot reach over her head, can lift only five to ten pounds repeatedly and fifteen to twenty pounds occasionally, and is

limited to work not requiring constant close attention to detail. However, discounting Dolph's complaints of disabling pain, the ALJ agreed with the vocational expert that she can perform her past relevant work as an apartment and hotel manager because that work does not involve extended sitting and allows one to move about as desired.

## II. The Treating Physician Opinion Issue.

In May 1998, a private disability claims agent asked Dr. Shadur to provide updated information about Dolph's work restrictions and limitations and to complete a Physical Capacities Evaluation Form. Dr. Shadur responded that Dolph should not sit or stand for more than thirty minutes or walk more than 500 yards, and that she is limited to sitting and walking two hours and standing one hour in an eight-hour workday, with rests. On appeal, Dolph argues the ALJ erred by ignoring these opinions of her treating physician. Under the Commissioner's regulations, a treating physician's opinion is given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). Accordingly, an ALJ should "give good reasons" for discounting a treating physician's opinion. Prosch, 201 F.3d at 1013.

Dr. Shadur was Dolph's treating physician for her polycystic kidney disease. He has consistently reported that she does not suffer from disabling renal failure and her blood pressure is well-controlled. The ALJ credited Dr. Shadur's opinion that this impairment causes Dolph stomach pain and discomfort that prevents her from sitting for more than thirty minutes at a time, thereby disabling her from her prior work of a clerical nature. The ALJ gave less weight to Dr. Shadur's opinions as to the effects of Dolph's cervical condition because "Dr. Shadur has not treated the claimant for her neck and arm disorders, he has not made any clinical findings concerning those impairments, and his specialty is nephrology." Consistent with the regulations for evaluating and weighing medical opinions, the ALJ relied on case

notes by Dr. Jones and Dr. Iqbal, who treated Dolph's cervical condition and did not opine that it was disabling, and by Dr. Adelman, a consulting neurologist who examined Dolph. See 20 C.F.R. § 404.1527(d)(ii).

The ALJ's extensive opinion indicates a thorough understanding of the medical evidence in the administrative record. Moreover, the only opinion in Dr. Shadur's May 1998 response that the ALJ's opinion does not discuss -- that Dolph can only sit and walk two hours and stand one hour in an eight-hour day -- was inconclusive in the context of this proceeding. In her application for disability benefits, Dolph reported that her job as apartment manager involved two hours of walking, one hour of standing, and five hours of sitting in a typical workday. The vocational expert opined that this job permits a person to vary her work activities to accommodate an inability to walk, stand, or sit for prolonged periods. Dr. Shadur did not answer a later question on the May 1998 form which asked whether Dolph "can work," either part-time or full-time. Thus, Dr. Shadur's cryptic answers on the form are not necessarily inconsistent with the vocational expert's opinion that Dolph retains the residual functional capacity to work as an apartment or hotel manager. Like the district court, we conclude that substantial evidence supports the ALJ's evaluation of Dr. Shadur's medical opinions.

### III. Dolph's Subjective Complaints of Pain.

In Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), we held that, when ruling on a claim of disabling pain, the ALJ must consider evidence relating to a claimant's prior work record; the claimant's daily activities; and observations by treating or examining physicians concerning such matters as the duration, frequency, and intensity of the pain, the dosage, effectiveness, and side effects of medication, and the claimant's functional restrictions. See also 20 C.F.R. § 404.1529. The ALJ is permitted to discount such complaints if there are inconsistencies in the record as a whole, but the ALJ must make express credibility findings and explain the record

inconsistencies that support those findings. See Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996); Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992).

In this case, the ALJ expressly considered Dolph's steady work history and acknowledged that her inability to sit for extended periods has disabled her from working as a transcriptionist or secretary. He considered her daily activities, which are inconsistent with total disability and suggest an ability to perform her prior work as a hotel or apartment manager. He examined the extensive medical evidence and found that Dolph's "cervical pain and carpal tunnel syndrome have been adequately addressed through surgery," and that the evidence relating to polycystic kidney disease reflects consistently stable renal function and "does not show ongoing complaints of severe, protracted discomfort."

While there is little doubt that Dolph experiences pain, the issue in this case is whether the pain is so severe as to be disabling. See Robinson, 950 F.2d at 839. The ALJ considered the Polaski factors and articulated the record inconsistencies that caused him to discount Dolph's complaints of disabling pain. While the record might also support a contrary determination, we conclude that the ALJ's findings and conclusion on this issue are supported by substantial evidence viewing the administrative record as a whole.

The judgment of the district court is affirmed.

RICHARD S. ARNOLD, Circuit Judge, dissenting.

I respectfully dissent. In my view, the ALJ did not sufficiently explain the reasons for rejecting the opinion of the treating physician, Dr. Craig Shadur. It is true that Dr. Shadur is a kidney specialist, and that he has not treated the claimant for her neck and arm disorders. To reject his opinion about the effects of the pain Ms. Dolph suffers for this reason, however, seems to me unreasonable. One part of the body can

easily affect another.  It seems to be common ground that Ms. Dolph in fact does suffer from stomach pain, caused by her polycystic kidney disease.  I do not see why Dr. Shadur's opinion that this pain affects her ability to sit, walk, and stand should not be accepted, merely because he has not treated the claimant for neck and arm disorders.  The human body should not be so easily separated into distinct parts having no relation to each other.

For these reasons, I would award Ms. Dolph the benefits she seeks, or, at least, remand for further consideration by the ALJ of Dr. Shadur's opinions.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.