# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3891

_____

Shirley Ann Knox

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 23, 2015
Filed: January 29, 2016
[Unpublished]

_____

Before LOKEN, BEAM, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Shirley Knox applied for Social Security disability insurance benefits, claiming a disability onset date of January 13, 2011, when she ended her long time employment as an assembly worker at Lennox Industries. Following a hearing, the Administrative Law Judge ("ALJ") found that Knox had two severe impairments, degenerative disc disease and a history of right shoulder surgery, that left her with the

residual functional capacity (RFC) to perform sedentary work restricted to overhead reaching and pushing/pulling with her right arm only occasionally. Based on this RFC, the ALJ found that Knox could not perform her past relevant light work but that there were jobs such as telephone information clerk and document preparer that Knox could perform before becoming a person "closely approaching advanced age (age 50-54)." 20 C.F.R. § 404.1563(d). Applying the principle that the agency "will not apply the age categories mechanically in a borderline situation," 20 C.F.R. § 404.1563(b), the ALJ concluded that Knox became disabled on April 25, 2012, six months before her fiftieth birthday, and granted disability benefits commencing on that date.

After the Appeals Council denied Knox's administrative appeal, she commenced this action, seeking judicial review of the agency's denial of benefits from January 13, 2011, to April 25, 2012. The district court[1] granted summary judgment for the Commissioner, concluding that substantial evidence on the administrative record as a whole supported the ALJ's decision. Knox appeals. Applying the same deferential standard of review, we affirm. See Welsh v. Colvin, 765 F.3d 926, 927 (8th Cir. 2014) (standard of review).

**A.** On appeal, Knox first argues the ALJ erred by failing to accord controlling weight to the opinions of two treating physicians, Dr. Columbus Brown, a rheumatologist, and Dr. Mahmood Ahmad, a pain specialist. On April 7, 2011, in a one-paragraph letter "To Whom It May Concern," Dr. Brown opined that Knox "has moderate to severe pains diffusely in her body" due to fibromyalgia syndrome and therefore cannot stand/walk for more than ten minutes without being able to rest for

---

[1]The Honorable James M. Moody Jr., United States District Judge for the Eastern District of Arkansas, adopting the Recommended Disposition of the Honorable Jerome T. Kearney, United States Magistrate Judge for the Eastern District of Arkansas.

at least five-minutes; cannot sit for longer than one hour without moving around; and cannot lift, carry, or handle objects greater than ten pounds without significant difficulty. The ALJ gave great weight to Dr. Brown's lifting assessment because it was consistent with other medical evidence but gave no weight to his other assessments "because they are unsupported by objective or clinical findings of impairments so severe as to cause such extreme limitations."

On August 9, 2011, Dr. Ahmad completed an RFC questionnaire in which he opined that Knox could not work even in a low-stress job; could sit for only one hour at a time; could stand for only twenty minutes at a time; could sit and stand/walk for less than two hours in an eight-hour work day; must be able to shift positions throughout the workday and take unscheduled fifteen-minute breaks every twenty minutes; must elevate her legs at ninety degrees for half of an eight-hour work day; could frequently lift fewer than ten pounds but never more than that; and had significant limitations with reaching, handling, and fingering. He further opined that Knox's impairments would cause her to be absent from work more than four days per month, and therefore she could not participate in substantial gainful employment. The ALJ gave no weight to these assessments for the same reasons.[2]

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Gieseke v. Colvin, 770 F.3d 1186, 1188 (8th Cir. 2014); see 20 C.F.R. § 404.1527(c)(2). "[A]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating

---

[2]"A treating physician's checkmarks on [a medical source statement] form are conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record." Cain v. Barnhart, 197 Fed. App'x 531, 533 (8th Cir. 2006).

physician renders inconsistent opinions that undermine the credibility of such opinions." Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). Here, the opinions in question were inconsistent with the medical evidence and with the opinions of numerous treating and consulting physicians during the period in question:

- In October 2009, Dr. Jason Stewart performed surgery on Knox's right shoulder and allowed Knox to resume light, left-handed work. At a February 1 follow-up appointment, Knox demonstrated a full range of motion but stated that she could not return to work. Dr. Stewart referred her for a functional capacity evaluation. Because Knox demonstrated inconsistent effort and behavior at that evaluation, the testing center reported that she could complete at least light work but the center could not determine her true work capabilities.

- In July 14, 2010, Dr. Harold Chakales examined Knox for complaints of chronic bilateral shoulder pain and numbness in her arms and hands. After follow-up evaluations, Dr. Chakales opined that Knox had achieved maximum medical improvement, "should be able to return to light work," and would have to learn to live with continued pain. At about that time, Knox began seeing Brent Sprinkle, D.O., complaining of lower back pain after a fall at work. When an x-ray showed disc-space narrowing but an MRI was normal, Dr. Sprinkle diagnosed lumbar degenerative disc disease, rather than a work injury. Knox rejected most of Dr. Sprinkle's proposed treatments. Dr. Sprinkle discontinued treating Knox after she accused him of providing an untruthful medical opinion for Lennox's benefit.

- On June 13, 2011, a state medical consultant reviewed Knox's complete medical history and performed an RFC assessment. He concluded that Knox could occasionally lift/carry ten pounds, frequently lift/carry less than ten pounds, stand/walk with normal breaks for at least two hours in an eight-hour workday, sit with regular breaks for six total hours in an eight-hour workday, had limited ability

to push/pull in her upper extremities, and retained the ability to perform sedentary work with these restrictions.

- On August 23, 2011, another state medical consultant reviewed Knox's complete medical history and submitted a functional capacity assessment which affirmed the June 13 assessment, including the opinion that Knox could perform sedentary work with the stated restrictions.

Based on this conflicting medical evidence, like the district court we conclude that substantial evidence supported the ALJ's decision to discount the opinions of Dr. Ahmad and Dr. Brown.

**B.** Knox next argues that the Commissioner erred in finding her subjective complaints of disabling pain not credible based on her treatment history and daily activities. The ALJ noted that Knox had received conservative medical treatment for back and shoulder pain, with no inpatient or emergency room treatment for acute pain; that there was no documentary evidence of medical treatment for pain in the eleven months prior to the hearing; and that Knox performed normal daily activities such as completing household chores, maintaining primary care for her eleven-year-old grandson, and managing the household.

In evaluating a claim of disabling pain, "[t]he ALJ is permitted to discount such complaints if there are inconsistencies in the record as a whole, but the ALJ must make express credibility findings and explain the record inconsistencies that support those findings." Dolph v. Barnhart, 308 F.3d 876, 879 (8th Cir. 2002); see 20 C.F.R. § 404.1529. "We will defer to the ALJ's credibility finding if the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011) (quotation omitted). We conclude that the ALJ conducted the proper analysis and that substantial evidence supports the decision

to discredit Knox's subjective complaints of disabling pain.  See Moad v. Massanari, 260 F.3d 887, 892 (8th Cir. 2001) (not seeking medical assistance for alleged physical impairments "contradicts . . . subjective complaints of disabling conditions").[3]

**C.** Finally, Knox argues that the ALJ's residual functional capacity finding was not supported by substantial evidence because the ALJ did not order a psychological examination or evaluate Dr. Ahmad's "Secondary Diagnosis" that Knox suffered from "Adjustment Disorder Anxiety/Depression."  Though an ALJ must develop the record fully and fairly, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."  Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994); see 20 C.F.R. § 404.1519a.

Here, Knox's application for disability benefits did not claim disability due to anxiety and depression or any other mental impairment.  The medical record contained no evidence that Knox ever sought treatment for a mental impairment, as opposed to pain caused by her physical impairments, or that a physician ever recommended that she seek counseling or psychiatric help.  At the hearing, neither Knox nor her lawyer asserted that anxiety and depression were disabling conditions, either alone or in conjunction with her physical impairments.  There was no evidence that Knox ever sought a consultative psychological examination, nor did she request that the ALJ obtain an examination.  Thus, there was insufficient evidence to "alert[] the ALJ to the possibility of a severe mental impairment."  Byes v. Astrue, 687 F.3d 913, 916 (8th Cir. 2012).  Accordingly, the ALJ made no finding of mental impairments, severe or non-severe.  Knox's counseled administrative appeal did not

---

[3]The magistrate judge noted that there was no evidence of medical treatment in the eight months prior to April 25, 2012, which suggested that prior treatment alleviated or resolved Knox's symptoms and that Knox "over-stated her symptoms."

even mention any alleged mental impairments. Given the substantial medical evidence supporting the ALJ's RFC finding, reversal for failure to develop the record is not warranted. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995).

The judgment of the district court is affirmed.

_____